**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF SOUTH DAKOTA**
ROOM 211
FEDERAL BUILDING AND U.S. POST OFFICE
225 SOUTH PIERRE STREET
PIERRE, SOUTH DAKOTA 57501-2463

IRVIN N. HOYT                                              TELEPHONE (605) 224-0560
BANKRUPTCY JUDGE                                           FAX (605) 224-9020

January 31, 2007

James A. Craig, Esq.
Counsel for Debtor
714 West 41st Street
Sioux Falls, South Dakota  57105-6406

Trustee Lee Ann Pierce
Post Office Box 524
Brookings, South Dakota  57006

    Subject:  *In re Jamie L. Herding,*
                  Chapter 7, Bankr. No. 05-42419

Dear Counsel and Trustee:

    The matter before the Court is Trustee Lee Ann Pierce's objection to Debtor's claimed homestead exemption and Debtor Jamie L. Herding's response.  This is a core matter under 11 U.S.C. § 157(b)(2).  This letter decision and accompanying order shall constitute the Court's findings and conclusions under Fed.R.Bankr.P. 7052 and 9014(c).  As set forth below, the trustee's objection will be sustained.

    *Summary.*  Jamie L. Herding ("Debtor") filed a Chapter 7 petition in bankruptcy on October 15, 2005.  Among his assets he included a home in Dell Rapids, South Dakota.  Debtor valued this home at $225,000.00 and said encumbrances against it totaled $198,190.00.  Debtor claimed the $26,810.00 in equity in the homestead exempt.  However, on his Statement of Intention, Debtor stated he intended to surrender the home to the mortgage holder.

    Chapter 7 Trustee Lee Ann Pierce timely objected to Debtor's homestead exemption claim.  She argued Debtor could not declare the Dell Rapids home exempt because he was not living there on the petition date, and in light of the planned surrender, he would not be living there in the future.  Debtor responded saying at the time of his petition, Debtor and his wife were separated, and his wife was living in the home.  He was barred from residing there due to a protection order.  Debtor further expected the home to be divided as a marital asset.  He argued his intention to surrender the home to the mortgage holder could not be equated with an abandonment of his homestead interest in the equity.

*In re Herding*
January 31, 2007
Page 2

An evidentiary hearing was set. Debtor filed a pre-hearing brief. He stated he believed the evidence would show he made about one-half the mortgage payments on the home. He also calculated that after payment of the mortgage and taxes on the home, there would be equity of $27,347.99. Citing some case law regarding what constitutes an abandonment of a homestead interest, Debtor argued it would be poor public policy to allow Debtor's compliance with a state court's protection order to be equated with an abandonment of his homestead interest. He also argued it would be unfair for his wife to be able to declare the home fully exempt as her homestead (as she had done in her own earlier Chapter 7 case, Bankr. No. 04-41192) when he had paid for half of it. Finally, he argued since the total equity was less than $30,000.00, there was no purpose served by the trustee's objection, because even if Debtor could not declare the home exempt as his homestead, his wife could.

An evidentiary hearing was held. The parties agreed to the admission of Debtor's exhibits 1, 2, 4, 5, 6, 7, 8, 9, and 10. Debtor and his wife both testified. Trustee Pierce's Exhibit A was admitted during the course of the hearing.

The evidence showed Debtor had paid $31,562.00 against the home mortgage, while Colleen had paid $26,290.00, which included a substantial down payment, in part from the equity in her previous house. As the result of marital problems, on June 30, 2005, Colleen obtained a protection order from the state court, and Debtor left the marital home involuntarily.[1] Debtor commenced a divorce action on July 5, 2005. Debtor did not make any mortgage payments after he vacated the home.

After leaving the marital home, Debtor lived for a short time with a family member and then rented quarters in Alpena, South Dakota, all while he continued to work in Madison, South Dakota. The protection order was still in effect when Debtor filed his Chapter 7 petition on October 15, 2005.

Debtor testified he would prefer to live in the Dell Rapids home because it was convenient to his job. He further stated that at the time he filed his petition, he understood he could not keep an interest he had in some North Dakota farm land, but he also

---

[1] The protection order was dated June 30, 2005, and filed July 1, 2005. It was unclear which day Debtor was removed from the home.

thought he could preserve whatever interest he retained in the Dell Rapids home. He begrudgingly acknowledged his property settlement negotiations with Colleen to date have never reflected his desire to return to the Dell Rapids home. Debtor was not familiar with what "surrendering" his interest in the home entailed, as he reported he intended to do on his Statement of Intention. He also had no understanding his intention to surrender the Dell Rapids home might be considered contrary to his claim of a homestead exemption in it.

Colleen testified that during their property settlement negotiations, Debtor never expressed an intention to return to the marital home. Instead, she said he always offered the marital home in Dell Rapids to her, and he wanted to keep his interest in the North Dakota farm land.

In his written closing arguments, Debtor contended his intention to surrender the Dell Rapids home should not be considered incongruent with his intention to preserve his interest in it under a homestead exemption. He further argued he never had any intention of abandoning his homestead.

In her closing argument, Trustee Pierce contended while Debtor may have testified at the hearing that he wanted to return to the Dell Rapids home, none of his actions between the time he left the marital home and the date he filed his bankruptcy petition reflected that intention.

*Discussion*. When a person files a Chapter 7 petition, *all* his property, as defined by 11 U.S.C. § 541(a), becomes property of the bankruptcy estate. It includes even that property which the debtor may later exempt. 11 U.S.C. § 522(b)(a debtor may exempt certain property "from property of the estate"); *Owen v. Owen*, 500 U.S. 305, 308 (1991). In the District of South Dakota, the property a bankruptcy debtor may exempt is defined primarily by state law. 11 U.S.C. § 522(b)(2) and S.D.C.L. § 43-45-13. Once exempt, that property generally is no longer liable for pre-petition or administrative claims. 11 U.S.C. § 522(c).

A debtor's entitlement to an exemption is determined on the date he files his bankruptcy petition. 11 U.S.C. § 522(b)(2)(A); *Mueller v. Buckley (In re Mueller)*, 215 B.R. 1018, 1022 (8th Cir. B.A.P. 1998)(cites therein); *Harris v. Herman (In re Herman)*, 120 B.R. 127, 130 (9th Cir. B.A.P. 1990). The value of exempt property in a Chapter 7 case is also determined on the date of the petition. *Armstrong v. Hursman (In re Hursman)*, 106 B.R. 625, 626 (Bankr.

*In re Herding*
January 31, 2007
Page 4

D.N.D. 1988). Exemptions are construed liberally in favor of the debtor. *Wallerstedt v. Sosne (In re Wallerstedt)*, 930 F.2d 630, 631 (8th Cir. 1991).

South Dakota's homestead exemption statute provides that a homestead, as defined by ch. 43-31, is absolutely exempt or, if it is sold under ch. 21-19 or sold voluntarily, then it is limited to $30,000.  S.D.C.L. § 43-45-3. This $30,000 will be absolutely exempt for one year after the owner receives the proceeds.  The homestead exemption is a privilege granted by law, not an estate in land.  *In re Wood*, 8 B.R. 882, 887 (Bankr. D.S.D. 1981)(citing *Botsford Lumber Co. v. Clouse*, 257 N.W. 106, 108 (S.D. 1934)(cited in *Schutterle v. Schutterle*, 260 N.W.2d 341 (S.D. 1977))); *Speck v. Anderson*, 318 N.W.2d 339, 344 (S.D. 1982)(quoting *Clouse*, 257 N.W. at 108).  Homestead laws, in particular, are construed "for the creation and protection of the family home." *In re Corbly*, 61 B.R. 843, 850 (Bankr. D.S.D. 1986)(citing *Ramsey v. Lake County*, 14 N.W.2d 125, 126 (S.D. 1944)). "The underlying purpose is to 'provide the security of a home to a family against the claims of creditors.'" *Corbly*, 61 B.R. at 850 (quoting *Speck*, 318 N.W.2d at 343).  Further,

> in the absence of any expression of a contrary intention[, a debtor] should be presumed to intend no further peril to his homestead right than the necessity demanded.

*Aisenbrey v. Hensley,* 17 N.W.2d 267, 169 (S.D. 1945).

The issue presented in this case is whether Debtor abandoned his homestead interest in the Dell Rapids home.

> The protection to a homestead afforded by the constitutional and statutory provisions lasts no longer than the occupancy of the premises as a homestead. But, the question of whether a homestead claimant has abandoned his homestead being mainly one of intent, no general rule of universal application can be enunciated, and the question whether an abandonment has taken place must depend upon the peculiar facts of each case. It is, however, generally recognized as an essential requisite of an abandonment of a homestead that there must be an actual relinquishment of possession of the premises and removal therefrom, coupled with an intention to abandon the use of the property as a homestead, or an intention

*In re Herding*
January 31, 2007
Page 5


      to remain away, formed after such removal.

*Warner v. Hopkins*, 176 N.W. 746, 748 (S.D. 1920)(quoting 13 R.C.L.[2] 648, § 109). An intent to abandon must be clearly established, and that intent should be proven by the best accessible evidence. *Id.* at 749 (quoting therein *McMillan v. Warner*, 38 Tex. 410 (Texas 1873)). The burden of proof is upon the objector. *Smith v. Midland National Life Insurance Co.*, 234 N.W. 20, 21 (S.D. 1930).

      That a party has left his home and been absent for an indefinite period would of itself be not sufficient evidence to establish the fact of abandonment, but such fact must be accompanied with the further proof of the intent not to return. How that intent is to be established must depend to a great extent upon the circumstances and facts surrounding each case. The declarations of a party before, at the time of, and after leaving his home may be given in evidence to establish the intent.

*Warner*, 176 N.W. at 749 (quoting *McMillan*, 38 Tex. 410).

      The South Dakota Supreme Court has recognized circumstances which may necessitate a debtor's absence from a homestead, but which do not cause the debtor's house to lose its homestead characteristic. These circumstances include when the absence is due to work elsewhere, health problems, or remarriage without the establishment of a new homestead, *Yellowhair v. Pratt*, 182 N.W. 702, 704 (S.D. 1921), and *Hewitt v. Carlson*, 244 N.W. 108, 109 (S.D. 1932); when the debtor has claimed no other property as a homestead, *Warner*, 176 N.W. at 748; or when a debtor lives elsewhere because of financial difficulties. *Id.*; *In re Hansen*, 17 B.R. 239, 241-42 (Bankr. D.S.D. 1982).

      While a party leaving a homestead must, in good faith, intend to return to it at some future date, such date need not be "fixed or definite" as to time; neither need such intent be an intent to return regardless of all possible contingencies; but if there is an honest belief that at some time in the future the party will reoccupy the property as a home, and such party does no act

---

[2] R.C.L. is an abbreviation for *Ruling Case Law*, a discontinued legal encyclopedia that encompassed decisions and annotations from several reporters.

      inconsistent with such belief and intent, the homestead right is not forfeited.

*Yellowhair*, 182 N.W. at 704. When a new domicile is created, however, the prior home clearly ceases as the debtor's homestead. *Somers v. Somers*, 131 N.W. 1091, 1094 (S.D. 1911)(cites therein).

      In this case, no one disputes Debtor left – involuntarily – the marital home on or about June 30, 2005, and was largely prevented from returning due to the restraining order. However, some time between June 30, 2005 and his petition date of October 15, 2005, Debtor relinquished any good faith intention he may have had to return to the Dell Rapids home. *See Knapp v. Brett*, 222 N.W. 297, 300 (S.D. 1928). This change in his intention is evidenced by Debtor's decision to discontinue making any mortgage payments and his property settlement offers in the divorce proceedings, which consistently preserved the North Dakota farm land for himself while giving the marital home to Colleen. Further, there was virtually no evidence he and Colleen would reconcile so as to allow him to return to the marital home.

      The only act Debtor made consistent with an intent to make the Dell Rapids his home again at some unspecified time was his declaration of a homestead exemption in it on the petition date. There is no evidence of any other efforts by Debtor to lawfully return to and use the Dell Rapids house as his home. *Compare Smith*, 234 N.W. at 21-22. Even interpreting the circumstances and law most favorable to Debtor, that declaration alone does not preserve a valid homestead interest for him in the Dell Rapids home. Accordingly, the trustee's objection to his homestead exemption claim must be sustained.

      This conclusion is consistent with the purpose of our state's homestead exemption statutes. Debtor and his estranged wife no longer maintained a marital home after June 30, 2005. She remained in the marital home and retained the homestead privilege attendant to the marital home. Though still married, Debtor and Colleen no longer formed a family unit. *Somers*, 131 N.W. at 1095. Accordingly, Debtor was free to establish his own home and receive any homestead exemption attendant to ownership of a home. That did not happen. Instead, after Debtor vacated the marital home, he soon lost any intention of returning. At that point, he surrendered any homestead exemption claim in the Dells Rapids home while retaining his ownership interest.

The Court does not decide today whether Debtor's decision to voluntarily surrender his interest in the Dell Rapids home to the mortgage holder constitutes a voluntary sale within the meaning of § 43-45-3(2). *See Karcher v. Gans*, 83 N.W. 431, 432-33 (S.D. 1900)(whether a sale is voluntary depends not of the mode of execution but on the presence or absence of the owner's consent)(cites therein). No sale proceeds from either a voluntary sale by Debtor and his wife or a foreclosure sale by the mortgage holder existed on the petition date. Thus, there were no sale proceeds Debtor could declare exempt.

An appropriate order will be entered.

Sincerely,

Irvin N. Hoyt
Bankruptcy Judge

INH:sh

CC: case file (correspondence)

On the above date, a copy of this document was mailed or faxed to the parties shown on the Notice of Electronic Filing as not having received electronic notice and Debtor(s), if Debtor(s) did not receive electronic notice.

Frederick M. Entwistle
Clerk, U.S. Bankruptcy Court
District of South Dakota

NOTICE OF ENTRY
Under Fed.R.Bankr.P. 9022(a)

This order/judgment was entered on the date shown above.

Frederick M. Entwistle
Clerk, U.S. Bankruptcy Court
District of South Dakota